# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**KELLY MCNEAL, et al.**                                                        **PLAINTIFFS**

**V.**                                                          **NO. 2:70-CV-00029-DMB**

**TATE COUNTY SCHOOL**
**DISTRICT, et al.**                                                           **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This desegregation case is before the Court on: (1) the motion of Tate County School District to expedite review of its motion to modify attendance zone lines, Doc. #17; (2) the motion of "Jessie Edwards, and a group of other concerned citizens and parents of children attending schools within the Tate County School District," for an enlargement of time to respond to the motion to modify, Doc. #14; and (3) the motion for substitution of certain "parents of children who are current students in the Tate County School District," Doc. #20.

## I
## Procedural History

On April 27, 1970, Jeffie McNeal, Jessie Mae Carter, Pearlene McGhee, Adell Davis, Timothy Lee, and Minnie Mae Moore filed a complaint on behalf of their children, also named in the complaint, alleging that the Tate County School District ("District") and its Board of Education were operating an unconstitutional dual education system. The same plaintiffs filed an amended complaint with the same substantive allegations on June 8, 1970.[1]

On August 4, 1970, United States District Judge Orma R. Smith entered an order enjoining the District from operating a dual system and directing the operation of a "unitary

---

[1] The amended complaint purports to be a class action complaint. However, it appears this action was never certified as a class action pursuant to Federal Rule of Civil Procedure 23.

school system as required by the Supreme Court of the United States ...." Doc. #13-1 at 1. To this end, Judge Smith directed that attendance in the District's schools be determined by assignment of students to three zones: "Easterly," "Northwesterly," and "Southwesterly." *Id*. at 3–4.

Over the ensuing five years, the District, employing methods such as ability grouping and private sale of a school to a private institution, unsuccessfully attempted to circumvent the requirements of the injunction. *See McNeal v. Tate Cty. Sch. Dist.*, 460 F.2d 568 (5th Cir. 1971); *McNeal v. Tate Cty. Sch. Dist.*, 508 F.2d 1017 (5th Cir. 1975). On July 11, 1975, Judge Smith entered a memorandum opinion and order directing desegregation in the District's classrooms. Doc. #1 at 5. Approximately one year later, on July 16, 1976, Attorney Solomon Osborne entered a notice of appearance on behalf of the plaintiffs. *Id*. Following Osborne's notice of appearance, this matter lay largely dormant for more than thirty years.[2] *See id*. at 5–6.

On August 9, 2010, the District filed a motion to re-draw the three attendance zones created by Judge Smith. Doc. #3. On September 3, 2010, this matter was reassigned to United States District Judge W. Allen Pepper. Judge Pepper, noting the absence of an objection from the plaintiffs, granted the District's motion on September 28, 2010. Doc. #4. Pursuant to Judge Pepper's order, and of relevance here, students residing in the Easterly Zone were assigned to Independence High School; students residing in the Northwesterly Zone were assigned to Coldwater High School; and students residing in the Southwesterly Zone were assigned to Strayhorn High School. *Id*. at 2–3.

Following Judge Pepper's September 2010 order, except for the continued filing of annual reports, this case remained inactive until April 1, 2016, when the District filed a motion to

---

[2] During this period, the District filed annual reports and a motion to change a school site, which was granted.

modify the attendance zone lines. Doc. #12. In its motion, the District asks the Court to modify the orders of Judge Smith and Judge Pepper to: (1) close Coldwater High School; and (2) modify the Northwesterly Zone to send some of its students to Independence High School and the remaining students to Strayhorn High School. *Id*.

On May 2, 2016, Osborne filed a "Motion for an Enlargement of Time to Respond to Defendants's Motion to Modify Attendance Zone Lines" "on behalf of Jessie Edwards, and a group of other concerned citizens and parents of children attending schools within the Tate County School District." Doc. #14. The motion purports to be an "Entry of Appearance," and seeks a thirty-day extension of the deadline to respond to the District's motion to modify. *Id*. Four days later, on May 6, 2016, the District responded in opposition to the motion for extension. Doc. #15. In its response brief, the District argues that the motion for extension should be denied because it fails to show good cause for the extension or excusable neglect for missing the original deadline. Doc. #16 at 2–3. The District also argues:

> [I]t is unclear how and when Mr. Edwards became a party to this decades old case. It is respectfully submitted that ... Mr. Edwards does not have a child enrolled in the Tate County School District. Without a child in the District, Mr. Edwards has no standing to bring this action. Asking for more time to respond to a 30 day old motion for a non-party litigant who lacks standing cannot amount to good cause.

*Id*.

On May 11, 2016, the District filed a motion to expedite review of its motion to modify the attendance zones. Doc. #17. On May 16, 2016, this Court[3] directed the District to supplement its motion to expedite:

> by filing with this Court an affidavit of a District employee with competent knowledge setting forth the latest date the Court could rule on the motion to

---
[3] On April 4, 2016, this case was reassigned to the undersigned district judge.

modify attendance zones and have the ordered modifications be implemented by the District for the 2016–2017 school year, should the Court grant the District's motion to modify the attendance zones.

Doc. #19 at 2.

On May 18, 2016, the District supplemented its motion to expedite with the affidavit of Dr. Daryl Scoggin, the Superintendent of the District. Doc. #21. In his affidavit, Dr. Scoggin represents that "[i]n order to effectively transition to the new configuration, the District requests an Order on or before May 27, 2016." *Id*. at ¶ 5. However, contrary to this Court's order, the affidavit fails to set forth the latest possible date for implementation of the new attendance zones sought for the 2016–2017 school year.

Also on May 18, 2016, a group of "parents of children who are current students in the Tate County School District" filed a motion seeking substitution and intervention as plaintiffs in this action. Doc. #20.

On May 25, 2016, this Court convened a telephonic conference with counsel for the parties. Doc. #25. At the conference, the District represented to the Court that the proposed modifications for the 2016–2017 school year could be timely implemented if the Court issued an order on or before June 15, 2016. Counsel for the plaintiffs committed to notify the Court by the following week as to whether the plaintiffs required any discovery to prepare a response to the District's motion to modify the attendance zones and, if so, the specific discovery needed.[4] The same day, the District responded in opposition to the motion for substitution and intervention. Doc. #23.

---

[4] Counsel for the plaintiffs was to notify the Court of such by the following Tuesday but by that deadline did not specifically describe any discovery needed by the plaintiffs. Rather, the plaintiffs' only reference to discovery appears in their response to the motion to expedite, in which they ask the Court to "grant them limited discovery so that they will be able to obtain the additional evidence needed to challenge the Defendants [sic] discriminatory actions, including the use of separate discriminatory attendance zones." Doc. #26 at 6.

4

On May 31, 2016, the plaintiffs responded in opposition to the motion to expedite, and replied in support of the motion for substitution and intervention and the motion for extension. Doc. #26; Doc. #27; Doc. #28. On June 6, 2016, the District replied in support of its motion to expedite. Doc. #30.

## II
## Motion for Substitution and Intervention

The motion for substitution and intervention seeks to add eight African American parents[5] of students in the District to "this matter pursuant to Fed. R. Civ. P. 17(a) and Fed. R. Civ. P. 24 ...." Doc. #20 at 1. The motion represents that the parents "have an interest in dismantling the unconstitutionally dual racially segregated school system to ensure that their children are granted and afforded equal educational opportunities ...." *Id*. at ¶ 2. The District responds that the motion should be denied because the motion is untimely, and because the proposed plaintiffs do not have standing because they have failed to identify an injurious and remediable action of the district and because the proposed modification would not injure them. *See* Doc. #24.

Rule 17(a)(1) provides, in relevant part, that "[a]n action must be prosecuted in the name of the real party in interest." However, Rule 17(a)(3) cautions that "[t]he court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Courts and commentators have observed that the substitution mechanism of Rule 17(a) "should be applied only to cases in which substitution of the real party in interest is necessary to avoid injustice." *Feist v. Consolidated Freightways Corp.*, 100 F.Supp.2d 273, 276

---

[5] The proposed plaintiffs are: Undra Todd, Linderia Todd, Rosaland Milam, Gwendolyn Bonne, Ciera Jackson, Georgia Carr, Angela Johnson, and Carolyn Daniels. Doc. #20 at ¶¶ 11–19. Jessie Edwards, the person identified in the motion for extension as a litigant, is not identified as a potential plaintiff.

(E.D. Pa. 1999); *see* 6A Fed. Prac. & Proc. Civ. § 1555 (3d ed.) ("A literal interpretation of Rule 17(a)(3) would make it applicable to every case in which an inappropriate plaintiff has been named. However, the rule should be applied only to cases in which substitution of the real party in interest is necessary to avoid injustice.") (internal footnote omitted).

Here, the proposed plaintiffs seek substitution to remedy the vestiges of discrimination remaining in the District (which has not been declared unitary). *See* Doc. #20 at ¶ 9. In 2012, United States District Judge Glen H. Davidson held that Rule 17 provided an appropriate mechanism in a desegregation action for substituting African American parents of children attending school within a district operating under a desegregation order. *Cowan ex rel. Johnson v. Bolivar Cty. Bd. of Educ.*, 914 F.Supp.2d 801, 810–11 (N.D Miss. 2012). In reaching this conclusion, Judge Davidson held:

> new Plaintiffs have standing to enforce the Court's prior desegregation Orders. These new Plaintiffs have a cognizable injury, "a personal interest, created by law, in having the State refrain from taking specific actions." *See Allen v. Wright*, 468 U.S. 737, 763, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). An injury in the context of school desegregation is "one of the most serious injuries recognized in our legal system." *See id.* at 755, 104 S.Ct. 3315. Also, "the injury alleged is fairly traceable to the Government conduct" challenged as unlawful, *see id.* at 756, 104 S.Ct. 3315, and the relief sought, if granted, could restore a denied right to the Plaintiffs.

*Id* at 811. There is no indication that any of the original plaintiffs in this action remain willing or able to pursue this action. The Court therefore concludes that here, as in *Cowan*, injustice would occur if substitution was not allowed and that the proposed plaintiffs identified in the motion to substitute have standing to pursue the action.[6] Accordingly, the motion to substitute is granted. Having allowed substitution, the new plaintiffs' request for intervention is denied as moot. *See*

---

[6] In reaching this conclusion, the Court rejects the District's unsupported arguments that in a desegregation case standing should be determined based on the possible impact of a pending motion to modify attendance zones or that substitution in a desegregation case should be denied based on the failure to timely respond to such a motion. Neither case law nor logic supports either proposition.

*F.T.C. v. Shomers*, 463 F. App'x 828, 829 (11th Cir. 2012) ("[T]he intervention issue is moot due to the ... substitution of the FTC as a party.").

## III
## Motion for Extension

Where, as here, there has been a finding of de jure segregation, a court "must exercise its broad equitable power to review and modify proposed remedies which are intended to create and maintain a unitary school system." *Flaxx v. Potts*, 567 F.Supp. 859, 861 (N.D. Tex. 1983). In considering whether to implement a proposed change to a desegregation plan, a court:

> must decide only whether the choice violates the Constitution or federal law. To make that determination, federal courts ask only whether the proposed modification fails to further desegregation or places an inequitable transportation burden on black students. So long as neither answer is in the affirmative, we must defer to the expertise of school boards in decisions of this nature.

*United States v. Mississippi (Choctaw Cty. Sch. Dist.)*, 941 F.Supp.2d 708, 714–15 (N.D. Miss. 2013) (quoting *Anderson ex rel. Anderson v. Canton Mun. Separate Sch. Dist.*, 232 F.3d 450 (5th Cir. 2000) (internal alterations omitted). In evaluating whether a plan furthers desegregation, a court should consider the six factors set forth in *Green v. County School Board*, 391 U.S. 430, 435 (1968). *See Lee v. Butler Cty. Bd. of Educ.*, 183 F.Supp.2d 1359, 1363 (M.D. Ala. 2002) (noting "*Green* factors [are] the areas of school operation which are traditionally held as indicators of a desegregated (or not) school system"). These factors are: student assignment, faculty, staff, transportation, extracurricular activities, and facilities. *Anderson v. Sch. Bd. of Madison Cty.*, 517 F.3d 292, 298 (5th Cir. 2008). While this standard of review for modifications places great trust in a district, a court must still "examine each of the proposed amendments in detail, keeping in mind the ultimate goal of achieving a unitary school system which offers quality education to all students." *Flaxx*, 567 F.Supp. at 861. This is true even where the requested relief is unopposed. *Id*. at 861–75 (evaluating impact on desegregation of

7

joint proposed desegregation plan). Furthermore, where the record is insufficient to make this determination, a court must ensure the adequacy of the record. *See United States v. Bd. of Educ. of Baldwin Cty.*, 417 F.2d 848, 850 (5th Cir. 1969) (directing hearing on proposed desegregation plan where record was "stale").

Here, the District has asked the Court to modify the controlling desegregation plan based on nothing more than projected enrollments resulting from the plan. *See* Doc. #13. Beyond an affidavit from Dr. Scoggin attesting to personal knowledge of the projections, there is no evidence as to how the projections were arrived at or what impact, if any, the modifications will have on the transportation burden borne by African American students, faculty assignments, staff assignments, extracurricular activities, and facilities. Under these circumstances, and commensurate with its duty to review the proposed modification, the Court deems it prudent to supplement the record on these topics by requesting additional briefing from the District and Plaintiffs, reserving the right to set the matter for hearing if the Court deems such necessary. Because this supplemental briefing, to be submitted pursuant to the schedule specified below, will provide the new substituted plaintiffs an opportunity to respond to the motion to modify, the motion for an extension to respond is denied as moot.

## IV
## Motion to Expedite

In its motion to expedite, the District represents that it seeks to "alter attendance zone lines for the coming 2016–2017 school year," that "time is of the essence in this matter as plans for students and teachers must be made as soon as possible for the coming 2016–2017 school term," and that such "plans necessarily hinge on this Court's decision in this matter." Doc. #17 at ¶¶ 3–5. Based on these proffered reasons, the District asks "that this Court engage in an expedited review of this case." *Id*. at ¶ 6.

The Court agrees that expedited review of the issue of altering attendance zones in this case appears appropriate. However, given the timing of the District's motion to expedite, the time for briefing expended on the other motions described herein, and the need to supplement the record through briefing and a possible hearing, the resolution of this matter by June 15, 2016, is impossible. Consequently, to the extent the motion to expedite seeks resolution of the District's motion to alter by June 15, 2016, the motion is denied. The Court will nevertheless endeavor to resolve this matter as expeditiously as possible. Accordingly, the motion to expedite is granted in part. In that regard: (1) within seven (7) days of the issuance of this Order, the District shall file a supplement to its motion to modify the attendance zones in accordance with this order, including a memorandum, supported by competent evidence; (2) within seven (7) days of the District's supplemental submission, Plaintiffs shall file a response, including a memorandum, supported by competent evidence, supporting or opposing the District's proposed modification to modify the attendance zones; and (3) within seven (7) days of the filing of Plaintiffs' memorandum, the District may file a reply, including a memorandum, supported by competent evidence, in support of its proposed modification.

## V
### Conclusion

For the reasons above: (1) the motion for extension [14] is **DENIED as moot**; (2) the motion for substitution [20] is **GRANTED**; and (3) the motion to expedite [17] is **GRANTED in Part and DENIED in Part**.

**SO ORDERED**, this 14th day of June, 2016.

/s/ Debra M. Brown
**UNITED STATES DISTRICT JUDGE**