# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**KELLY MCNEAL, et al.**                                                                   **PLAINTIFFS**

**V.**                                                            **NO. 2:70-CV-00029-DMB**

**TATE COUNTY SCHOOL**
**DISTRICT, et al.**                                                            **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This desegregation case is before the Court on: (1) the plaintiffs' "Motion for Relief Pursuant to Desegregation Order, for Discovery, to Compel Defendants to File Complete Mandated Reports and to Comply with the Requirements of the August 4, 1970 Desegregation Order" ("Omnibus Motion"), Doc. #37; and (2) the Tate County School District's motion to strike the Omnibus Motion, Doc. #43.

## I
## Procedural History

### A. Initiation of this Action and 1970 Desegregation Order

On April 27, 1970, Jeffie McNeal, along with other individual plaintiffs, filed a complaint on behalf of their children, also named in the complaint, alleging that the Tate County School District ("District") and its Board of Education were operating an unconstitutional dual education system. *See* Doc. #1. The same plaintiffs filed an amended complaint with the same substantive allegations on June 8, 1970. *Id.*

On August 4, 1970, United States District Judge Orma R. Smith entered an order enjoining the District from operating a dual system and directing the operation of a "unitary school system as required by the Supreme Court of the United States ...." Doc. #13-1 at 1. To this end, Judge Smith directed that attendance in the District's schools be determined by the

assignment of students to three zones: "Easterly," "Northwesterly," and "Southwesterly." *Id*. at 3–4. The order also called for the filing of regular reports to include, among other things, the race and number of teachers in the District. *Id*. at 9.

Over the ensuing five years, the District, employing methods such as ability grouping and the private sale of a school to a private institution, unsuccessfully attempted to circumvent the requirements of the injunction. *See McNeal v. Tate Cty. Sch. Dist.*, 460 F.2d 568 (5th Cir. 1971); *McNeal v. Tate Cty. Sch. Dist.*, 508 F.2d 1017 (5th Cir. 1975). On July 11, 1975, Judge Smith entered a memorandum opinion and order mandating desegregation in the District's classrooms. Doc. #1 at 5. Approximately one year later, on July 16, 1976, Solomon Osborne entered a notice of appearance as counsel for the plaintiffs. *Id*. Following Osborne's notice of appearance, this matter lay largely dormant for more than thirty years.[1] *See id*. at 5–6.

### B. 2010 Redrawing of Attendance Lines

On August 9, 2010, the District filed a motion to re-draw the three attendance zones created by Judge Smith. Doc. #3. On September 3, 2010, this case was reassigned to United States District Judge W. Allen Pepper. Judge Pepper, noting the absence of an objection from the plaintiffs, granted the District's motion on September 28, 2010. Doc. #4. Pursuant to Judge Pepper's order, and of relevance here, students residing in the Easterly Zone were assigned to Independence High School; students residing in the Northwesterly Zone were assigned to the high school at Coldwater Attendance Center (Coldwater High School); and students residing in the Southwesterly Zone were assigned to Strayhorn High School. *Id*. at 2–3.

---

[1] During this period, the District filed annual reports and a motion to change a school site, which was granted.

### C. 2016 Request to Close Coldwater High School

Following Judge Pepper's September 2010 order, except for the continued filing of annual reports, this case remained inactive until April 1, 2016, when the District filed a motion to modify the attendance zone lines. Doc. #12. In its motion, the District asks the Court to modify the orders of Judge Smith and Judge Pepper to: (1) close Coldwater High School; and (2) modify the Northwesterly Zone to send some of its students to Independence High School and the remaining students to Strayhorn High School. *Id*. This case was reassigned to the undersigned district judge on April 4, 2016. Approximately one month later, on May 11, 2016, the District filed a motion seeking expedited review of its motion to modify. Doc. #17.

On May 18, 2016, a group of parents of students in the District filed a motion to be substituted as plaintiffs in this action. Doc. #20. On June 14, 2016, this Court entered an order granting the motion to substitute and requesting additional information on the motion to modify the desegregation plan. Doc. #33. With regard to the motion to expedite, the order stated that the Court would "endeavor to resolve this matter as expeditiously as possible." *Id*. at 9.

On June 23, 2016, the plaintiffs filed a "Motion for Relief Pursuant to Desegregation Order, for Discovery, to Compel Defendants to File Complete Mandated Reports and to Comply with the Requirements of the August 4, 1970 Desegregation Order." Doc. #37. In the motion, the plaintiffs alleged, among other things, that the District had filed years of annual reports omitting information regarding teachers in the District. *Id*. The plaintiffs requested that the time for filing their response to the District's motion to modify be extended until the District provided such information. *Id*. at 9.

In response to the plaintiffs' motion, the District filed a supplemental report conceding that the required data showing the number of teachers by race at each school in the District "has

not been submitted since 2000." Doc. #38. The supplement purports to provide this data "for years 2010-2011 through 2015-2016," based on data "readily available" to the District. *Id*.; *see* Doc. #38-1. The District represents in the supplement that it "is still compiling data pre-2010 and will seasonably supplement this report once it obtains same." Doc. #38.

On June 28, 2016, this Court entered an order granting in part and deferring in part the Omnibus Motion. Doc. #39. The Court stayed the plaintiffs' deadline to respond to the motion to modify because "information about the number of teachers by race is necessary for Plaintiffs to respond to statements made by the District in its supplemental brief in support of its motion to modify the attendance zone lines (statements included at the Court's direction) regarding faculty and staff in the District's schools." *Id*. at 3. Further, the order directed the District to show cause why it should not be sanctioned for its years of non-compliance with the desegregation order's mandate to report the number of teachers by race for each school in the District. *Id*.

The District responded to the order to show cause on July 5, 2016.[2] Doc. #41. Six days later, on July 11, 2016, the District moved to strike the Omnibus Motion. Doc. #43. The same day, the District responded in opposition to the Omnibus Motion. Doc. #45. The plaintiffs responded in opposition to the motion to strike on July 27, 2016, Doc. #54; but did not file a reply in support of the Omnibus Motion. The District replied in support of its motion to strike on August 8, 2016. Doc. #56.

## II
## Motion to Strike

In its motion to strike, the District argues that the Omnibus Motion should be stricken because: (1) the motion is unsupported by a memorandum brief, in violation of this Court's

---

[2] Since the District's response to the June 28, 2016, show cause order, the plaintiffs have sought sanctions against the District for additional alleged violations of the 1970 desegregation order. *See* Doc. #48; Doc. #57; Doc. #69. All such issues of sanctions will be addressed by separate order.

4

Local Rules; (2) the plaintiffs failed to support their motion with specific facts; and (3) the requests for discovery are inappropriate and untimely.

"The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings." *Zep Inc. v. Midwest Motor Supply Co.*, 726 F.Supp.2d 818, 822 (S.D. Ohio 2010). However, "[t]he federal courts are vested with inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases, including the power of the court to control its docket." *United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005) (internal brackets and quotation marks omitted). A court, exercising this inherent power, may strike an improperly filed document. *See, e.g., Powell v. Dallas Morning News L.P.*, 776 F.Supp.2d 240, 246 (N.D. Tex. 2011) ("Pursuant to the Court's inherent power to control its docket and prevent undue delay, Defendants['] Motion to Strike is GRANTED.") (internal citation and emphasis omitted). "This authority should be invoked only in extreme cases, however, and it must be used with great restraint." *Goldman v. Hartford Life and Acc. Ins. Co.*, 417 F.Supp.2d 788, 793 (E.D. La. 2006) (citing *Toon v. Wackenhut Corr. Corp.*, 250 F.3d 950, 952–52 (5th Cir. 2001)).

The District has offered no argument or authority that this is an extreme case such that striking (rather than denying) the Omnibus Motion would further the orderly or expeditious disposition of this case. Under these circumstances, the Court declines to exercise its inherent power to strike the Omnibus Motion.

### III
### Omnibus Motion

The Omnibus Motion, which is written entirely in a bold-faced font and does not contain a single case citation in ten pages of text, represents that the District has violated numerous requirements of the desegregation order originally entered in this case, including a provision

requiring the reporting of the race and number of full-time teachers in the District.[3] Doc. #37 at ¶ 10. Beyond seeking a stay of the deadline to respond to the motion to modify, the plaintiffs ask the Court for an order: (1) enforcing the terms of the 1970 desegregation order; (2) directing the District to supplement its annual reports with the missing information regarding the race and number of full-time teachers in the District; and (3) directing the District to provide discovery on a wide variety of issues. *Id.* at ¶¶ 8, 15, 19, and 21.

### A. Request to Enforce the 1970 Order

In their Omnibus Motion, the plaintiffs seek, among other things:

> enforcement of the 1970 Order to halt the discriminatory use of attendance zones to maintain segregated school; to end the segregation of the District's faculty and staff; to end segregated bus routes; to end racial discrimination in extracurricular activities; to end racial discrimination in school construction and school maintenance; to end racial discrimination in school site selection; to end racial discrimination in student discipline; to end racial discrimination against black faculty and staff; and to end racial discrimination against black applicants for jobs and for promotion .

Doc. #37 at ¶ 8.

It is unclear what type of relief is requested in the above paragraph. To the extent the plaintiffs seek an order prohibiting segregation in the above areas, such a request is necessarily mooted by the 1970 order, which prohibits the precise conduct described above. *See generally Meyer v. Brown & Root Const. Co.*, 661 F.2d 369, 373 (5th Cir. 1981) ("A general injunction which in essence orders a defendant to obey the law is not permitted."). To the extent the plaintiffs seek a court order enjoining specific conduct, no such specific conduct has been

---

[3] Under the Court's Local Rules, the "[f]ailure to timely submit the required motion documents *may* result in the denial of the motion." L.U. Civ. R. 7(b)(4) (emphases added). While the plaintiffs did not submit a memorandum brief with their motion as required by the Local Rules, whether to deny the motion for that reason is left to the Court's discretion. This Court declines to deny (or to strike) the Omnibus Motion based merely on the plaintiff's failure to submit an accompanying memorandum given the nature of the matters raised in the Omnibus Motion, particularly, the District's undisputed sixteen-year violation of the 1970 desegregation order's reporting requirement.

identified in the request for relief.[4] *See McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 284 (5th Cir. 2008) (injunction to "cease and desist all racially biased assignment and promotion practices" impermissibly vague); *see also Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016) ("[T]o comply with Rule 65(d) the district court's order granting the injunction must state its terms specifically and describe in reasonable detail the conduct restrained or required.") (internal quotation marks and alterations omitted). Under these circumstances, the plaintiffs' request for an injunction will be denied without prejudice. Should discovery in this case, as allowed below, reveal specific instances of misconduct, the plaintiffs' may renew their request for relief on these subjects through the filing of a motion detailing specific violations and seeking specific appropriate relief.

### B. Request for Supplemental Reports

Plaintiffs also seek an:

> order from this Court requiring the Defendants to file amended reports with this Court containing the information required by the August 4, 1970, desegregation order. Plaintiffs also request that the time for filing their response be extended to a reasonable time after the Defendants have provided the information which they were ordered to include in their annual report to this Court, and which they have not included in the annual report they were ordered to file with this Court.

*Id*. at ¶ 21 (emphases omitted).

After the plaintiffs filed their motion, the District submitted reports addressing the missing teacher information[5] identified in the Omnibus Motion. And, in its June 28, 2016, order,

---

[4] In a separate section of the Omnibus Motion, the plaintiffs, without citation to evidence or authority, allege that the District is violating the 1970 order in a wide variety of ways, including the manipulation of attendance zones, discriminatory assignments of teachers and students, and allocation of resources. *See* Doc. #37 at ¶ 9. This language, which in essence claims the District has engaged in segregation in a variety of unspecified decisions, also fails for specificity. *See Meyer*, 661 F.2d at 373.

[5] In a separate motion and subsequent filings, the plaintiffs argue that the supplemental information provided by the District does not contain all required teacher information and that the District failed to include additional required information related to construction and renovations within the District. The Court has reviewed the supplemental information and concludes that it contains the required teacher information. To the extent the plaintiffs conclude differently, they may so advise the Court but must state the precise bases for their disagreement and direct the Court

the Court stayed the plaintiffs' deadline to respond to the motion to modify. *See* Doc. #39. Accordingly, this request will be denied as moot.

### C. Discovery Requests

> Plaintiffs also pray for an order from this court allowing them to conduct discovery regarding disciplinary action that the Defendant district has taken against black students and black faculty and staff during the period of time that the desegregation order has been in effect; that an order be entered allowing the Plaintiffs to conduct discovery regarding students who have been allowed to transfer into the Tate County District and out of the Tate County District during this same period of time; that an order be entered allowing Plaintiffs to conduct discovery regarding teacher and faculty assignment to the District schools ; and to conduct discovery regarding the race and number of students who have exercised their option under the "minority /majority transfer program", or "freedom of choice program", since the order of desegregation has been in effect.

*Id.* at ¶ 19 (emphases omitted). Elsewhere in the Omnibus Motion, the plaintiffs seek an order directing the District "to provide the … information requested by this Motion …." *Id.* at ¶ 22. When framed in this fashion, it appears the plaintiffs seek two separate forms of relief – an opportunity to conduct discovery and an order compelling production of the requested discovery.

### 1. Opportunity to Conduct Discovery

"It is common knowledge that the widest latitude conceivable in discovery has been extended to the U.S. Department of Justice, Civil Rights and related agencies, and parties with compatible interests, seeking to eradicate the evils of school segregation and racial discrimination." *United States ex rel. Mitchell v. Choctaw Cty. Bd. of Educ.*, 310 F.Supp. 804, 809 (S.D. Ala. 1969). Accordingly, in a desegregation case, discovery should be permitted when it is relevant to the determination of the merits of a pending motion, or would be otherwise discoverable under Rule 26 of the Federal Rules of Civil Procedure. *See Lee v. Lee Cty. Bd. of Educ.*, 639 F.2d 1243, 1252 (5th Cir. 1981) ("Evidence [was] clearly relevant to the

---

to the specific parts of the District's supplement regarding teacher information that they believe is still non-compliant. The allegations related to the missing construction and renovation reporting will be addressed by separate order, along with, as mentioned above, the related issue of sanctions.

determination of the merits of the government's [motion]. The district court's prohibition of discovery on these matters was also error since the pre-1970 policies and conduct were clearly relevant to the subject matter involved in the pending action, as required by Fed.R.Civ.P. 26.") (internal quotation marks omitted); *see generally Elston v. Talladega Cty. Bd. of Educ.*, 997 F.2d 1394, 1425 (11th Cir. 1993) ("We agree with plaintiffs that actions taken by the Board prior to the 1985-86 school year could be evidence that later Board actions were discriminatorily motivated."). Rule 26, in turn, provides:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

In recognition of the importance of the issues presented in this case and the District's admitted failure to comply with certain of its reporting duties, the parties will be allowed a discovery period to address matters related to the District's motion to modify and to the litigation as a whole, which may include discovery on all subjects mentioned in the Omnibus Motion. Such discovery shall proceed under the schedule set forth below.

### 2. Compelling Discovery Responses

Under the Local Rules of this Court, "[b]efore service of a discovery motion, counsel must confer in good faith to determine to what extent the issue in question can be resolved without court intervention. A Good Faith Certificate … must be filed with all discovery motions." L.U. Civ. R. 37(a). The "certificate is required to encourage attorneys to maintain

civility in dealing with each other." *Wells v. Sears Roebuck and Co.*, 203 F.R.D. 240, 241 (S.D. Miss. 2001). Pursuant to Local Rule 37(c), the failure to file a Good Faith Certificate "will result in a denial of the motion without prejudice to the party, who may refile the motion upon conformity with th[e] rule."

In the Omnibus Motion, the plaintiffs ask the Court to compel certain discovery from the District[6] but have not filed a Good Faith Certificate. Under these circumstances, and in light of the discovery period allowed by the Court, the request for an order compelling discovery from the District will be denied without prejudice. Should the District object to the discovery requests allowed above and should good faith discussions regarding the objections prove futile, the plaintiffs may re-file their motion to compel discovery.

## IV
## Conclusion

For the reasons above, it is **ORDERED**:

1. The Tate County School District's Motion to Strike [43] is **DENIED**;

2. The portion of the plaintiffs' Omnibus Motion [37] deferred by this Court's June 28, 2016, order is **GRANTED in Part and DENIED in Part.** It is GRANTED to the extent it seeks a discovery period and is DENIED in all other respects. Such denial is without prejudice to the plaintiffs' right to enforce their rights under the 1970 desegregation order and the United States Constitution, and to seek to compel properly-requested discovery.

3. The following schedule for discovery shall apply to this case:

---

[6] The plaintiffs state in the Omnibus Motion that, by letter to the District's counsel, they asked the District to provide the information which they seek the Court to compel. The letter is dated June 22, 2016, one day before the plaintiffs filed the Omnibus Motion. Doc. #37 at ¶ 20.

a. By November 25, 2016, the parties may propound all final discovery requests, if any, on the other parties. The parties shall have fourteen (14) days from the date of service of any such discovery requests to respond and/or produce documents to the requesting party. The parties shall promptly notify the Court of any discovery disputes that they cannot voluntarily resolve.

b. By December 9, 2016, the parties shall designate their respective expert witnesses, indicating for each whether the expert witness *may* or *will* be called to testify at a hearing, if one is deemed necessary, and attaching the curriculum vitae or resume of each expert witness to the designation. Each expert report shall include all information required by Rule 26 of the Federal Rules of Civil Procedure.

c. The parties will complete all discovery, including any depositions, by December 23, 2016.

d. The plaintiffs shall respond to the District's motion to modify the attendance zones on or before January 13, 2017.

e. The District may reply to the plaintiffs' response to the motion to modify the attendance zones on or before January 27, 2017.

f. If necessary, an evidentiary hearing will be held in February 2017, and will be set by separate notice.

g. Any information not provided in discovery will be inadmissible at the evidentiary hearing, absent approval by this Court.

**SO ORDERED**, this 10th day of November, 2016.

        **/s/ Debra M. Brown**
        **UNITED STATES DISTRICT JUDGE**