**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION**

**KELLY MCNEAL, et al.**                                                 **PLAINTIFFS**

**V.**                                                          **NO. 2:70-CV-29-DMB**

**TATE COUNTY SCHOOL
DISTRICT, et al.**                                                  **DEFENDANTS**

**OPINION AND ORDER**

      This Court conditionally granted the Tate County School District's petition to close Coldwater High School, dependent on the School District's ability to show Coldwater's closure would not place an inequitable transportation burden on the School District's African-American students. Because the School District has demonstrated that the transportation burden resulting from Coldwater's closure will not inequitably burden African-American students, closure will be permitted.

**I**
**Relevant Procedural History**

      Since August 4, 1970, the Tate County School District has operated under a desegregation order issued by this Court.[1] Doc. #12-1. On September 14, 2021, the Tate County School District filed a "Petition for Closure of Coldwater High School" ("Closure Petition"), seeking to close one of three high schools in the School District. Doc. #123. The Closure Petition represented that under Mississippi House Bill 669,

> the transfer of Coldwater's students (by their choice) would be to either Strayhorn High School or Independence High School, or if the student's residence is closer to the appropriate high school within the Senatobia Municipal School District, then the student may opt to be transferred to the Senatobia Municipal School District.

---

[1] A detailed procedural history is set forth in the Court's December 7, 2016, memorandum opinion and order. Doc. #94.

*Id.* at 1–2.  The Closure Petition detailed two different "redistricting plans" which "split[] the current Coldwater High population" along either the Highway 51 or Interstate 55 boundary line. *Id.* at 8.  However, the Closure Petition did not ask the Court to elect which plan was appropriate.

The Court addressed the Closure Petition in a July 13, 2022, order.  Doc. #146.  The Court first stated the applicable standard when "considering whether to implement a proposed change to a desegregation plan"—"whether the modification fails to further desegregation or places an inequitable transportation burden on black students."  *Id.* at 3 (quoting *United States v. Mississippi (Choctaw Cnty. Sch. Dist.)*, 941 F. Supp. 2d 708, 714–715 (N.D. Miss. 2013)).  The Court then found all but one of the six factors announced in *Green v. County School Board*, 391 U.S. 430, 435 (1968), which a court should consider "[i]n evaluating whether a plan furthers desegregation," "weigh[ed] in favor of allowing closure" and deemed the remaining factor—transportation— neutral. *Id.* at 3, 11.  The Court granted the Closure Petition but, based on the "concern the closure may place an inequitable transportation burden on the African-American students, the granting of the petition [was] conditioned on the School District providing additional information regarding the transportation burden on the students throughout the district."  *Id.* at 12.

On July 27, 2022, the School District submitted information detailing the current commute times for students attending all three high schools, as well as the commute times for Coldwater High students according to race under both the Highway 51 and Interstate 55 plans.  Doc. #147. In its submission, the School District asks "that the conditional approval of the Closure of Coldwater High School be fully and finally granted" and seeks direction "as to 1) whether the District should begin to implement the Highway 51 redistricting plan or the Interstate 55 redistricting plan and 2) whether the transferring Coldwater students should be afforded a choice in their new high school for the 2022-23 school year."  *Id.* at 3–4.  During an August 4, 2022,

status conference, the plaintiffs' counsel represented that the plaintiffs did not have a preference as to which plan is implemented. Following the conference—presumably in response to the Court's concern regarding the reliability of the data submitted—the School District submitted affidavits from employees who rode on each bus route and reported the approximate run time. *See* Doc. #151-1 to Doc. #151-6.

The Court, pursuant to notice, held an evidentiary hearing on the transportation issue on November 17, 2022. *See* Doc. #159. The School District called two witnesses and introduced documentary evidence. The plaintiffs did not call any witnesses or present any documentary evidence of their own.

The School District's first witness was Jerome Martin, the School District's Transportation Director. Martin testified that on average, the longest bus routes are an "hour and ten, hour and fifteen minutes" and that his goal in composing new bus routes based on Coldwater's proposed closure was to ensure that "no student was on the bus more than an hour and fifteen minutes." He decided this maximum time limit based on his own experience and not any specific policy. Martin explained that to gather the information presented in the affidavits, he instructed employees "to stop at each address [on the bus route] and the times should have been put on the sheet to get accurate times of what it takes to run the bus route." Martin admitted, however, that he was not on every bus as the routes were driven and he does not know if each driver followed his instructions "to stop at every stop." When asked whether he preferred the Highway 51 or Interstate 55 option, he responded that the Highway 51 plan would be better because it would "split the town of Coldwater" between the School District's two other high schools. During Martin's testimony, the School District introduced maps of the current bus routes and the proposed bus routes under both the Highway 51 and Interstate 55 plans, as well as a chart comparing the average and maximum

duration of the bus routes by race of the students.  This evidence reflects that under either the Highway 51 or Interstate 55 plan, two African-American students and one white student would have a "maximum trip duration" of an hour and thirteen minutes.

The School District's other witness was Chris Watson, who testified as an expert in urban and regional planning and demography.[2]  Based on the information the School District provided to him,[3] Watson compiled charts detailing the length of the current average bus routes by race as well as the maximum duration for each route by race.  Watson testified that currently, the average trip to Coldwater High School is 22 minutes for white students, 25 minutes for black students, 22 minutes for Hispanic students, and 26 minutes for students of some other race; the average trip to Strayhorn High School is 21 minutes for white students, 31 minutes for black students, 19 minutes for Hispanic students, and 19 minutes for other students; and the averages "go up a little bit" for trips to Independence High School because it is a "more rural" and "substantially larger" attendance zone.  According to Watson, under the Highway 51 plan, the averages would increase by 13 minutes for white students and 10 minutes for black students; and under the Interstate 55 plan, the averages would increase by 15 minutes and 13 minutes, respectively.

## II
## Discussion

Based on the unrebutted evidence before the Court, the average bus trip for students across all three high schools is currently 24 minutes for white students, 28 minutes for African-American students, 24 minutes for Hispanic students, and 24 minutes for other students.  If Coldwater closed,

---

[2] The plaintiffs initially objected to Watson's qualification as an expert in demography but after questioning Watson withdrew the objection.

[3] This information included "Excel spreadsheet information for each of their existing bus routes as well as their proposed bus routes," including "the raw data, the routes and the route numbers, the student listing, [and] the time of day that they made each stop along the route when they had computed the route duration."

under the Highway 51 plan, the average bus trip is estimated to be 28 minutes for white students, 31 minutes for African-American students, 23 minutes for Hispanic students, and 30 minutes for other students. Similarly, under the Interstate 55 plan, the averages are, respectively, 29 minutes, 33 minutes, 23 minutes, and 30 minutes. Because under either plan the increase in average travel time is less than six minutes, regardless of race, these numbers show that neither plan places an inequitable transportation burden on the African-American students.[4] And while the maximum trip duration of an hour and 13 minutes seems to be less than ideal, because such is a policy consideration and does not directly impact "the establishment of a unitary school system"— especially given that two African-American students and a white student experience this same maximum duration under both proposed plans—it is "to be determined by the Board of Education, not by the federal courts." *See United States v. Perry Cnty. Bd. of Educ.*, 567 F.2d 277, 280 (5th Cir. 1978). Accordingly, the Court concludes the School District has satisfied the condition that Coldwater's closure will not place an inequitable transportation burden on Coldwater's African-American students but rather will be equitably distributed to all students.

As for whether the Interstate 55 or Highway 51 plan is more appropriate, or whether transferring Coldwater students should be allowed to choose the high school to attend,[5] the Court declines to comment. Neither question is formally or properly before the Court. Even if they were, both plans appear to further desegregation without resulting in an inequitable transportation burden; and "the law does not provide for the courts to become super school boards except upon a

---

[4] Under either plan, the increase in average travel time for white students is greater than or equal to the increase for African-American students.

[5] The School District's counsel advised the Court during a conference that the option of transferring a Coldwater student to Senatobia High School is not a true option because Senatobia was not amenable to entering into the necessary agreement to do so.

strong showing of a violation of federal law or constitutional standards."[6]  So the Court will leave to the School District which of the two plans to implement in effectuating Coldwater High's closure and whether students should be given a choice.  Once the School District has made these decisions, it may submit a motion specifically seeking the appropriate modifications to the attendance zones.

### III
### Conclusion

Because the School District has satisfied its burden of showing that the closure of Coldwater High School will not place an inequitable transportation burden on the African-American students, the Closure Petition [123] is fully **GRANTED**.

**SO ORDERED**, this 12th day of December, 2022.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**

---

[6] *Perkins v. Alamo Heights Indep. Sch. Dist.*, 204 F. Supp. 2d 991, 998 (W.D. Tex. 2002); *see Perry Cnty.*, 567 F.2d at 280; *United States v. Kemper Cnty. Bd. of Educ.*, No. 3:66-cv-1373, 2022 WL 180652, at *4 (S.D. Miss. Jan. 19, 2022) (closure of schools is one "of the most important functions of local school authorities") (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 21 (1971)).